O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 13-00119 DOC (ANx)                                    Date: April 11, 2013

Title: TERRI PEREA v. WALGREEN COMPANY, *et al.*

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING MOTION TO DISMISS**

Before the Court is Walgreen Company's ("Walgreens's" or "Defendant's") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 5). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After considering the moving, opposing, and replying papers the Court DENIES Defendant's Motion to Dismiss under Rule 12(b)(1), but GRANTS Defendant's Motion to Dismiss under 12(b)(6).

**I. Background**

Judge Enslen of the U.S. District Court, Western District of Michigan, aptly summarized the heart and soul of this case, and similar cases concerning the regulation of food, when he said: "I believe that a consumer has the right to be informed of the nature and substance of the food he ingests. Nutrition, as well as the pleasure of the palate, affects the quality of life." *American Meat Institute v. Ball*, 550 F. Supp. 285, 288 (W.D. Mich. 1982).

The gravamen of Terri Perea's Complaint is that Walgreens violated state law by selling a product labeled as "Nice 100% Pure Honey" from which all the naturally occurring pollen had been avoidably removed. The Complaint alleges the following facts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)　　　　　　　　　　　　　　Date: April 11, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2

### a. Terri Perea's Walgreens Purchase

On July 17, 2012, Ms. Perea ("Plaintiff") purchased a container of Walgreens's private-label brand of "Nice 100% Pure Honey" (the "Nice Product"). Notice of Removal (Dkt. 1), Ex. A [hereinafter "Compl."] ¶ 36. When Plaintiff purchased the Nice Product, she believed that it had not been altered in any way to remove the pollen. *Id.* However, Plaintiff subsequently had the Nice Product tested by a melissopalynologist, Professor Vaughn Bryant of Texas A&M University, who concluded that the Nice Product contained no pollen. *Id.* ¶ 37.

### b. The Value of Pollen

Honey must be filtered to remove debris such as dirt and bee parts in order to be safe for human consumption. *Id.* ¶ 22. Some producers also filter most or all of the pollen from honey because it helps to slow down or prevent crystallization of the honey. *Id.* ¶ 28. Crystallization, which is the precipitation of sugar from the supersaturated honey solution, changes the appearance of honey. *Id.* There are three levels of filtration: (1) "straining" honey will remove foreign matter from honey but not all of the pollen; (2) "micro-filtration" removes almost all particles from honey but usually leaves some pollen, depending on the size of the pollen grains and the type of micro-filtration; and (3) "ultra-filtration" removes all pollen grains from the honey. *Id.* ¶¶ 24-26.

Ingesting the pollen naturally occurring in honey is believed to provide health benefits. Pollen contains protein, vitamins, minerals, beneficial fatty acids, carotenoids, and bioflavonoids. *Id.* ¶ 30. Many consumers believe that pollen helps lower cholesterol and may prevent other ailments. *Id.* In addition, the pollen in any given sample of honey can be used to identify the geographical origin of the honey. Knowing where their honey comes from is important to consumers because they can avoid purchasing honey from places like China. *Id.* ¶ 3. Chinese honey has been known to contain chemicals, metal, and antibiotics; therefore, "the ability to determine the geographic origin of honey has value to the California consumer if for no other reason than to ensure that the honey purchased is not a product of China." *Id.* Because Defendant's Nice Product is completely devoid of pollen, it is impossible to be certain that the product did not originate from China. *Id.* ¶ 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013

Page 3

### c. The Present Lawsuit

On December 19, 2012, Plaintiff filed her Summons and Class Action Complaint against Walgreens in the Superior Court of California, San Bernardino County, Case No. CIVDS1213101. Notice of Removal ¶ 1. Plaintiff alleges that the Nice Product is unlawfully being sold in California because, pursuant to section 29413(e) of the California Food and Agriculture Code ("section 29413(e)"), no product may be sold as "honey" that has had its natural pollen removed where such removal is avoidable.[1] Compl. ¶ 19. By selling the Nice Product as "honey" in contravention of section 29413(e), Defendant also has violated and continues to violate section 29671[2] of the California Food and Agriculture Code ("section 29671") as well as California's Unfair Competition Law (the "UCL"). *Id.* ¶¶ 20, 58.

On January 18, 2013, Walgreens removed the Class Action Complaint to the U.S. District Court for the Central District of California, Eastern Division. Notice of Removal at 1. On January 28, 2013, the case was reassigned to this Court pursuant to General Order 08-05, because a substantially similar case was at that time pending before this Court.[3] Order Re. Transfer Pursuant to General Order 08-05 – Related Case (Dkt. 12).

### d. Defendant's Motion to Dismiss

On January 25, 2013, Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 5) on the following grounds: Plaintiff's claims are preempted by federal law, the California Honey Statute impermissibly burdens interstate commerce, Plaintiff lacks standing, and Plaintiff has failed to state a claim under the UCL.

---

[1] "[N]o pollen or constituent particular to honey may be removed except where unavoidable in the removal of foreign inorganic or organic matter." Cal. Food & Agric. Code § 29413(e).

[2] "It is unlawful for any person to . . . sell any honey . . . or any product which is marked, labeled, or designated as honey, in bulk or in any container or subcontainer which does not conform to the provisions of this chapter." Cal. Food & Agric. Code § 29671.

[3] *Overton v. CVS Pharmacy, Inc.*, No. SACV 12-00982 DOC (ANx), was voluntarily dismissed with prejudice by plaintiff Meryl Overton on February 5, 2013 (Dkt. 41).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)                      Date: April 11, 2013
                                                                                                    Page 4

## II. Legal Standards for Dismissal

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, the court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 13-00119-DOC (ANx)                          Date: April 11, 2013
                                                                                            Page 5

granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in the plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

       Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. Cty. of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

       Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Federal Rule of Civil Procedure 15(a)(2) states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### III.     Discussion

       First, the Court will resolve the parties' dispute as to the proper characterization of Plaintiff's claim. Second, the Court will address Plaintiff's standing. Third, the Court will address the preemption doctrine as applied to Plaintiff's cause of action. Fourth, the Court will address why, even accepting Plaintiff's argument that she is not bringing a labeling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)　　　　　　　　　　　　　　Date: April 11, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

claim but rather a claim seeking to enjoin the sale of Defendant's product entirely, Plaintiff's claim must fail as a matter of law.

### a. What is Plaintiff's Lawsuit Really About?

It is important at the outset of the Court's analysis to properly characterize Plaintiff's claim. Plaintiff argues that she is not seeking to enforce section 29413(e) as a labeling standard, nor is she seeking for Walgreens's honey to be labeled differently. Opp'n (Dkt. 15) at 3. Rather, she is seeking to have Walgreens's Nice Product enjoined from sale, regardless of how it is labeled, because it is unlawful and violates California's requirement that honey not have pollen removed except where "unavoidable in the removal of foreign inorganic or organic matter." *Id.* at 7 (citing Cal. Food & Agric. Code § 29413(e)).

Therefore, Plaintiff argues, this lawsuit may sidestep the growing body of case law holding that labeling claims regarding pollen-removed honey are preempted by the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, as amended by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 341, *et seq. See, e.g.*, *Regan v. Sioux Honey Ass'n, Coop.*, No. 12-C-758, 2013 WL 395127 (E.D. Wisc. Jan. 31, 2013); *Ross v. Sioux Honey Ass'n, Coop.*, No. C-12-1645 EMC, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013); *Overton v. CVS Caremark*, No. SACV 12-0982 DOC (ANx) (C.D. Cal. Dec. 11, 2012) (Dkt. 35); *Brod v. Sioux Honey Ass'n, Coop*, No. C-12-1322 EMC, 2012 WL 3987516 (N.D. Cal. Sept. 11, 2012).

Plaintiff claims that she does not bring any cause of action arising under federal or state laws addressing false or deceptive advertising and/or labeling. However, Plaintiff cannot avoid the precedents mentioned above for three reasons.

First, it is clear from the face of her Complaint that Plaintiff's claim is inextricable from the labeling of the Nice Product:

> The Nice Product is labeled 'Nice 100% Pure Honey' . . . Neither the front nor back labels disclose the country(ies) of origin for the purported honey . . . . The California Honey Statutes further make it "unlawful for any person to . . . sell any honey, adulterated honey or any product *which is marked, labeled, or designated as honey* . . . which does not conform to the provisions of this chapter." Cal. Food & Agric. Code § 29671 . . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)                              Date: April 11, 2013
                                                              Page 7

> On or about July 17, 2012, Ms. Perea purchased a container of Walgreens's "Nice 100% Pure Honey" (i.e. the Nice Product) from a Walgreens store . . . .

Compl. ¶¶ 16, 20, 35 (emphasis added).

The only reasonable inference from the facts alleged in the Complaint is that Plaintiff purchased the product because she relied on the "100% Pure Honey" label and that she would not have purchased the product were it not labeled "Honey" or if it was labeled with some disclaimer such as "Pollen-Free Honey" or "Honey Without Pollen."

Second, the only permissible reading of Plaintiff's first cause of action, section 29413(e), together with section 29671, is that the statutes establish a "labeling requirement" for what can be sold as "honey" because, by its terms, section 29671 only applies to products "marked, labeled, or designated" as honey. Also, regardless of how Plaintiff attempts to characterize her claim, as discussed *infra* in section III.e., section 29413(e) is preempted because it establishes a state standard of identity for honey that does not comply with federal law.

Third, although Plaintiff maintains that her claim has nothing to do with labeling, she must resort to a labeling case to argue that she has standing to bring her claim. *See* Opp'n at 17 (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323-24 (2011)). As discussed *infra* in section III.b., Plaintiff has suffered an injury because she relied on the "100% Pure Honey" label on Defendant's product in believing that it contained pollen, and subsequently spent money to purchase the product.

The Court concludes that Plaintiff's cause of action is inescapably a labeling claim and the Court proceeds accordingly with its analysis.

### b. Standing

Defendant challenges Plaintiff's standing on grounds that she has suffered no injury because it is not illegal to sell pollen-less honey. Mot. at 19; Reply (Dkt. 18) at 15. Alternatively, Defendant argues that Plaintiff cannot claim injury because she failed to mitigate, since, with Walgreens's money-back guarantee, she could have simply asked for a refund. Reply at 17. Defendants do not appear to dispute causation or redressability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013
                                                                                                                                                        Page 8

       To establish standing under Article III of the Constitution, a plaintiff must demonstrate injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To sufficiently allege injury-in-fact, a plaintiff must plead "an invasion of a legally protected interest which is [ ] concrete and particularized," meaning that the injury must "affect the plaintiff in a personal and individual way[.]" *Lujan*, 504 U.S. at 560–61. "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing[.]" *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972).

       Additionally, under California's UCL, "plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition[.]" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). There are "innumerable ways" in which "lost money or property" can be shown, including where plaintiffs:

> (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) [were] deprived of money or property to which he or she has a cognizable claim; or (4) [were] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset*, 51 Cal. 4th at 323.

       A plaintiff has suffered an economic injury to satisfy the requirements of standing when she relies on a product label and would not have purchased the product but for the information on the label. *See Ross*, 2013 WL 146367, at *6 (citing *Brod*, 2012 WL 3987516, at *6; *Kwikset*, 51 Cal. 4th at 328-30).

       Here, Plaintiff paid money to purchase the product labeled as "100% Pure Honey" because she believed that honey sold in California must contain pollen, and she alleges that honey without pollen has less value than what she paid for the Nice Product. Compl. ¶¶ 34-36. Defendant does not dispute that the Nice Product is devoid of pollen. Defendant argues that Plaintiff has not suffered an injury because it is perfectly legal to sell pollen-less honey in California. Reply at 16. But whether or not Plaintiff has properly construed California law to support her claim that it is illegal to sell pollen-less honey is a question that goes to the merits of this case and should not be conflated with the question of standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established, however, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)  Date: April 11, 2013
Page 9

before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").

Defendant also argues that Plaintiff got what she bargained for in purchasing the honey. Mot. at 19; Reply at 16-17. A plaintiff lacks standing when she purchased a product, later found that it contained a potentially harmful substance, but suffered no ill effects from use of the product. *See* Mot. at 19 (citing *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x. 257 (3d Cir. 2010); *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002); *Medley v. Johnson & Johnson*, No. 10-cv-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011)). But this rule is inapplicable to this case.

The Court is persuaded by the distinction made by other courts between the "harmful ingredient" cases cited above, and a case in which the plaintiff, relying on a label, unknowingly purchases a product lacking an ingredient important to the plaintiff's purchasing decision. *See, e.g., Ross*, 2013 WL 146367, at *7 (distinguishing *Rivera* and finding standing where plaintiff unknowingly purchased honey devoid of pollen); *Brod*, 2012 WL 3987516, at *4 (same); *see also Guerrero v. Target Corp.*, No. 12-21115-CIV, 2012 WL 3812324 at *3 (S.D. Fla. Sept. 4, 2012) ("In the present case, the issue is not whether the honey Plaintiff purchased contained an unsafe substance, but rather that the honey lacked an ingredient, pollen, that Plaintiff contends is an essential element of honey under Florida law.").

Finally, the Court finds unavailing and unsupported by any legal precedent Defendant's argument that Walgreens's "money-back guarantee" deprives Plaintiff of the ability to allege that she suffered economic injury. *See* Reply at 17.

Accordingly, Plaintiff has standing to bring her claims; and the Court DENIES Defendant's Motion to Dismiss under Rule 12(b)(1).

### c. The NLEA and the "Common or Usual Name" for "Honey"

Congress passed the NLEA in 1990 to amend the FDCA "to clarify and strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in food." H.R. Rep. No. 101-538, at 7 (1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013
                                                                                Page 10

---

The express preemption provision of the NLEA states that "no State . . . may . . . establish . . . any requirement for the labeling of food" that is: (1) "of the type required by . . . [21 U.S.C. §] 343(i)(1)"; and (2) "not identical to the requirement of such section." 21 U.S.C. § 343-1(a)(3).

Section 343(i)(1) of the NLEA applies to food without a federal "definition and standard of identity" and provides that "[a] food shall be deemed to be misbranded . . . [u]nless its label bears . . . the common or usual name of the food, if any there be." 21 U.S.C. § 343(i)(1). Essentially, if there is no federal standard of identity for a food product, the food product's label must bear the "common or usual name."[4]

This Court, in *Overton*, conducted a thorough analysis regarding whether the "common or usual name" for honey without pollen could be anything other than "honey." In *Overton* the Court found:

> "A common or usual name of a food" within the meaning of Federal Section 343(i)(1) "may be established by" either: (1) "common usage"; or (2) "a regulation." 21 C.F.R. § 102(d). Neither party provides any federal regulation establishing the "common or usual name" of a product where the pollen's removal was avoidable. Thus, the Court turns to what evidence shows a "common usage."
>
> To determine what words in common usage constitute a common or usual name, this Court identifies the following attributes of a "common or usual name":
>
>> The common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients. The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name.

---

[4] There is no dispute that no federal standard of identity for honey exists. *See* Mot. at 3; Opp'n at 9; *see also Regan*, 2013 WL 395127, at *2 (citing Dan Eggen, *Influence Industry: U.S. honey industry asks FDA for national purity standard*, WASHINGTON POST, July 1, 2010).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013
                                                                                            Page 11

21 C.F.R. § 102(a). In addition:

> The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food.

21 C.F.R. § 102(c).

The Court considers information provided by research groups with federal oversight as one potential source of a "common or usual name" established through common usage.

Defendant's argument that the term "honey" is the common or usual name for a product where the pollen's removal was avoidable is supported by the National Honey Board (the "Board"), which uses the word "honey" without mentioning pollen or stating whether the pollen has been avoidably or unavoidably removed. When defining "honey" the Board states: "Honey is honey, it's just that simple. A bottle of pure honey contains the natural sweet substance produced by honeybees from the nectar of plants or secretions of living parts of plants. Nothing else." In addition, in its document entitled "Honey, A Reference Guide to Nature's Sweetener" the Board explains: "Honey is composed primarily of the sugars glucose and fructose; its third greatest component is water. Honey also contains numerous other types of sugars, as well as acids, proteins and minerals." Lastly, in its section entitled "Basic Labeling Requirements," the Board explains that labels must communicate the common name of the product, meaning that "[t]he word 'honey' must be visible on the label." Like the Reference Guide, the section on labeling also does not mention pollen.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013
                                                                                                         Page 12

In fact, on April 16, 2012 Bruce Boynton, CEO of the Board, published an article entitled "Honey Without Pollen is Still Honey." In the article Boynton states:

> In the last several months various stories have resulted in misunderstanding and confusion about filtration, leading some readers to believe that any honey without pollen is not real honey. This is not true. Honey without pollen is still honey nutritionally and in flavor, and that is why the U.S. Department of Agriculture identifies it as such . . . The truth is that honey is made by honeybees from <u>nectar</u> of flowers and plants, not pollen. Pollen grains may end up in the exposed honey in the hive through a number of incidental or accidental ways, but it is not used by honey bees to make honey.

Boynton's observation that the term "honey" applies regardless of whether pollen has been removed seems consistent with the concept of a "common or usual name" as a term which "shall accurately identify or describe, in as *simple and direct terms as possible*, the basic nature of the food or its characterizing properties or ingredients." *See* 21 C.F.R. 102(a) (emphasis added). Thus, the Board and Boynton's observations lead the Court to believe that "honey" is the "common or usual name" for a product where the pollen's removal was avoidable.

*Overton*, at 11-14 (emphasis original) (footnotes omitted).

### d. California Adopted a State Standard of Identity for Honey

Section 29413(e) states that honey sold in California "shall not have begun to ferment or effervesce and no pollen or constituent particular to honey may be removed except where unavoidable in the removal of foreign inorganic or organic matter." Cal. Food & Agric. Code § 29413(e). Section 29671 states that it is "unlawful for any person to . . . sell any honey, adulterated honey or any product *which is marked, labeled, or designated as honey* . . . which does not conform to the provisions of this chapter." Cal. Food & Agric. Code § 29671 (emphasis added).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 13-00119-DOC (ANx)                      Date: April 11, 2013
                                                                                                                       Page 13

---

Section 29413(e) was amended in 2009 to adopt a state "standard of identity for honey[.]" Cal. B. Analysis, Assemb. Comm., 2009-2010 Reg. Sess. Assemb. B. 1216 (May 13, 2009). According to the legislative history of section 29413(e), the statute was amended to include certain requirements, including the prohibition of avoidable pollen removal, and "establish honey standards for moisture content, sugar content, water insoluble solids content, and processing." Cal. Comm. Rep., Cal. 2009-2010 Reg. Sess., 2009 Cal. Assemb. B. 1216(NS). The Comments to the California Committee Report on this bill noted that the amendments to section 29413(e) "will protect the standard of identity for honey to protect honey consumers, honey packers, and honey producers from false, deceptive, and misleading product labeling. A.B. 1216 seeks to provide a standard of identity of honey[.]" 2009 CA. A.B. 1216(NS).

### e. Federal Preemption of the California Honey Standard

Defendant argues that the Nice Product is "honey" as defined by common usage, regardless of the absence of pollen. Reply at 7. Therefore, 21 U.S.C. § 343(i)(1) and § 343-1(a)(3) apply to expressly preempt the application of section 29413(e) and 29671 to Defendant's product because the California statutes impose a requirement for the labeling of food that is different from 21 U.S.C. § 343(i). Specifically, the California statues are preempted because they prohibit labeling of the Nice Product with the "common or usual name" for the product as 21 U.S.C. § 343(i) requires. Mot. at 3-4.

Plaintiff argues that her claim is not preempted because the FDCA does not preempt state-created standards of identity unless the federal government has created a federal standard of identity for honey. Opp'n at 9-10. Plaintiff's argument fails.

It is well established that the states have a legitimate interest in protecting local citizens against fraudulent or deceptive marketing and sale of food products. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) (citing *Hygrade Provision Co. v. Sherman*, 266 U.S. 497 (1925); *Savage v. Jones*, 225 U.S. 501, 525-29 (1912); *Crossman v. Lurman*, 192 U.S. 189, 199-200 (1904); *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894)). However, the Supremacy Clause dictates that state laws must yield where Congress has stated a "clear and manifest purpose" to displace individual state regulation, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), to achieve exclusive federal regulation and national uniformity, *cf. Florida Lime*, 373 U.S. at 143-144. As discussed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)　　　　　　　　　　　　Date: April 11, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 14

---

further below, California's section 29413(e) falls within the scope of the express preemption clause of the NLEA and thus is unconstitutional.

　　　This Court, in *Overton*, was not persuaded by the argument that 21 U.S.C. § 343-1(a)(3) only applies where there exists a federally-created standard of identity. The Court found untenable the proposition that state-created standards of identity would trump 21 U.S.C. § 343(i)(1)'s requirement that a food be labeled by its "common or usual name[,]" only because no federal standard of identity exists. *Overton*, at 9; *see also Regan*, 2013 WL 395127, at *4-*5. To find otherwise would allow the states to establish different or arbitrary labeling requirements for those products without a federal standard of identity, which would undermine the purpose of the NLEA to promote uniformity in food labeling. *See Overton*, at 9. Uniformity promotes parity among the states, and prevents states from establishing standards or regulations that serve no other purpose than to protect local business from interstate commerce.

　　　In contrast, the U.S. District Court for the Southern District of Florida has held that 21 U.S.C. § 343-1(a)(1) does not expressly preempt a state's standard of identity. *Guerrero*, 889 F. Supp. 2d at 1362-63. The court in *Guerrero* found that Congress had only expressly preempted standards of identity that conflict with established federal standards. *Id.* at 1362 ("While Congress could have banned all state standards of identity, it did not do so."). The court reasoned that federal law did not preempt the Florida honey standard since there is no federal standard of identity for honey. *See id.* ("The Court does not find any conflict between this conclusion and 21 U.S.C. § 343-1(a)(3) because, if a state has prescribed a standard of identity for a food product, the provisions of 21 U.S.C. § 343(i)(1) are not triggered.").

　　　The Court is persuaded by the reasoning in *Regan* that directly addressed, and rejected, *Guererro*'s preemption analysis. The court in *Regan* found that 21 U.S.C. § 343-1(a) applies regardless of whether a federal standard of identity exists because it incorporates by reference both 21 U.S.C. §§ 343(g) and 343(i). *Regan*, 2013 WL 395127, at *4. The court noted that 21 U.S.C. §§ 343(g)[5] and 343(i) use identical language for their subsection title. *Id.* Section 343(g) of the NLEA applies to all products that have a federal standard of identity, while, 21 U.S.C. § 343(i) applies to all products that do not. *Id.* The court went on to find that the Wisconsin honey standard, which contained a prohibition on

---

[5] 21 U.S.C. § 343(g) states that a food that is branded with a federally established standard of identity is mislabeled if it does not conform to the requirements and definitions of that standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)                          Date: April 11, 2013
                                                                                      Page 15

---

the avoidable removal of honey identical to California's, was expressly preempted by 21 U.S.C. § 343-1(a)(3) and the "common or usual name" requirement of 21 U.S.C. § 343(i)(1). *Id*. at *5.

Also persuasive is the Food and Drug Administration's finding that the NLEA's express preemption clause applies even if there is no federal standard of identity:

> [U]nder section [343-1(a)(2)][6] through [343-1(a)(5)] a State may not establish or continue in effect any requirement "of the type" set forth in the sections of the act specified in section [343-1(a)(2)] through (a)(5). Thus, State or local requirements can be preempted under section [343-1(a)(2)] through (a)(5) even if no analogous Federal regulation had been promulgated.

State Petitions Requesting Exemption from Federal Preemption, 58 Fed. Reg. 2462–01, 2463 (Jan. 6, 1993) (cited in *Regan*, 2013 WL 395127, at *6 n.6).

Plaintiff's claim must fail because section 29413(e), in conjunction with section 29671, creates a requirement for the labeling of "honey" that is not identical to 21 U.S.C. § 343(i)(1). Section 343(i)(1) of the NLEA requires the Nice Product to be labeled "honey" (the "common or usual name" for the food). Section 29413(e), together with section 29671, prohibits the Nice Product from being sold when "labeled, marked, or designated" as "honey." Therefore, federal law preempts Plaintiff's claim that the California State Standard of Identity for honey prohibits the sale of the Nice Product as "honey." *See Overton*, at 15; *see also Brod*, 2012 WL 3987516, at *9 (finding conflict preemption between section 29413(e) and 21 U.S.C. § 343(i)).

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6). [7]

---

[6] Section 343-1 is also referred to as FDCA Section 403A. For consistency, the Court has substituted the corresponding Section Titles for the FDCA Section Numbers in this quote. *See* "FDA: Federal Food, Drug, and Cosmetic Act Chapter IV" *available at* http://www.fda.gov/RegulatoryInformation/Legislation/FederalFoodDrugandCosmeticActFDCAct/FDCActChapterIVFood/default.htm

[7] Because the Court GRANTS Defendant's Motion to Dismiss on the grounds that Plaintiff's claim is preempted, the court does not address Defendant's argument that the California Honey Statute violates the dormant Commerce Clause.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)                    Date: April 11, 2013
                                                                                                Page 16

### f. Plaintiff's Claims for Violation of California Food and Agriculture Code

      Plaintiff's Complaint must be dismissed even if the Court takes at face value Plaintiff's argument that her claim is not about labeling, but rather is "based on the fact that the Nice Product cannot legally be sold in California." Opp'n at 8. As explained below, Plaintiff has no viable cause of action under sections 29413(e) and 29671, either standing alone or as the basis for Plaintiff's UCL claim.

      Plaintiff's first cause of action states that Defendant violated section 29413(e) and section 29671 by selling a pollen-less product as "honey" in the state of California. Compl. ¶ 50. The parties dispute whether section 29413(e) actually operates to prohibit the sale of pollen-less honey. Regardless of the answer to this question, Plaintiff is not the appropriate party to enforce this law.

      When a State adopts a statute or regulation, it "does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages." *Vikco Ins. Servs., Inc. v. Oh. Indem. Co.*, 70 Cal. App. 4th 55, 62 (2007). When the Legislature intends to create a private right of action, it will do so "directly" and "in clear, understandable, unmistakable terms." *Vikco*, 70 Cal. App. 4th at 62–63 (quoting *Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 294–295 (1988)). Where, as here, "a regulatory statute provides for enforcement by an administrative agency, California courts generally conclude the Legislature intended the administrative remedy to be exclusive, unless the statutory language or legislative history clearly indicates otherwise." *Vikco*, 70 Cal. App. 4th at 66.

      California has vested enforcement of the honey statutes in "[t]he director and the commissioners of each county of the state, their deputies and inspectors[.]" Cal. Food & Agric. Code § 29441. California's honey statutes provide for civil penalties for a first violation, and criminal conviction for more than one violation within a single year that is punishable by a fine of up to $1,000.00, or imprisonment. *Id.* § 29701. The statutes do not provide for a private right of action, but rather authorize "prosecution" in "any county where any part of the offense occurred." *Id.* § 29702. It is clear from this statutory scheme that there is no private right of action to enforce sections 29413(e) and 29671.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)                     Date: April 11, 2013
                                                     Page 17

### g. Plaintiff's UCL Claim

Plaintiff's second cause of action alleges that Defendant's conduct in illegally selling the Nice Product as "honey" in California constitutes unlawful and unfair business practices under California's UCL. Compl. ¶ 58.

The UCL defines "unfair competition" as "any unlawful, unfair, or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Each prong of the UCL is a separate and distinct theory of liability. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Cal. App. 1999).[8] Under the "unlawful" prong, a practice violates the UCL if it also violates another state or federal law; the UCL "borrows" violations of other laws and treats them as independently actionable. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The UCL provides for a private right of action against any unlawful business practice, including violations of laws for which there is no direct private action. *VP Racing Fuels, Inc. v. Gen. Petrol. Corp.*, 673 F. Supp. 2d 1073, 1082 (E.D. Cal. 2009) (citing *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 908 (C.D. Cal. 1996)) ("[I]t is not necessary that the predicate law provide for private civil enforcement."). However, a defendant is not liable under the UCL if some other law clearly permits the conduct. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 994 (9th Cir. 2000) (citing *Cel-Tech.*, 20 Cal. 4th at 184).

As discussed above, 21 U.S.C. § 343(i)(1) requires a product for which there is no federal standard of identity to be labeled with the "common or usual name" when sold in interstate commerce. The "common or usual name" for Defendant's product is honey.[9] Therefore, 21 U.S.C. § 343(i)(1) clearly permits Defendant to sell its product labeled as honey. *See Knevelbaard*, 232 F.3d at 994. Because federal law permits the conduct that is the basis of Plaintiff's Complaint, Plaintiff has not stated a claim for unlawful business practices under the UCL.

### IV. Conclusion

---

[8] Plaintiff's Complaint only states a theory of liability for unlawful conduct, *see* Compl. ¶ 58, therefore the Court only analyzes Plaintiff's claim under this prong of the UCL.

[9] *See supra* section III.c.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 13-00119-DOC (ANx)            Date: April 11, 2013
                                                                                           Page 18

        The Court does not find preemption of a state's regulation concerning the public welfare or local commerce lightly. However, Plaintiff's concerns regarding the importation of contaminated honey from China and the true origins of Defendant's product may be better addressed through the democratic or administrative processes. Concerned consumers and public interest groups could request that their legislators address the importation of unsafe honey or petition the FDA for a national standard for honey that includes the presence of pollen. Additionally, strong consumer demand for honey with pollen, as demonstrated by this lawsuit and similar cases, presents a powerful incentive and opportunity for honey producers who do not remove all of the pollen from their product to label and advertise their product as "honey with pollen." Thus, Plaintiff and similarly situated consumers are not without remedy or without a voice in this ongoing debate about the proper labeling of honey.

        For the reasons stated above, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint.[10] Plaintiff shall file an amended complaint, if at all, on or before April 29, 2013.

        The Clerk shall serve a copy of this Order on all parties.

MINUTES FORM 11
CIVIL-GEN                                                               Initials of Deputy Clerk: jcb

---

[10] The Court doubts that Plaintiff could cure the deficiencies in her Complaint by amendment. However, leave to amend should be given with "extreme liberality." *See Morongo Band of Mission Indians*, 893 F.2d at 1079. In *Overton*, although the Court held that federal law preempted the plaintiff's cause of action, it still dismissed the plaintiff's first amended complaint without prejudice. *See Overton*, at 15. Accordingly, the Court grants Ms. Perea leave to amend her Complaint, insofar as she does not rely on any theories rejected in the preceding discussion.